UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :
THE NEW YORK TIMES COMPANY,      :
                                                      :
                                  Plaintiff,   :
                                                      :          19-CV-9821 (VSB)
               -against-                   :
                                                      :               **ORDER**
DEPARTMENT OF DEFENSE, et al.,       :
                                                      :
                                     Defendants.   :
                                                      :
------------------------------------------------------------X

<u>VERNON S. BRODERICK</u>, United States District Judge:

       Plaintiff the New York Times Company ("Plaintiff") brings this action against Defendants Department of Defense and Office of the Director of National Intelligence ("Defendants") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the production of agency records concerning the "interrogation technique" of "keeping detainees physically isolated from one another." (Doc. 4 ("Compl.") ¶¶ 1, 10.) Before me are the parties' competing proposals for the rate at which Central Command ("CENTCOM") will review and produce responsive records to Plaintiff. (Doc. 63 ("Pl.'s Letter"); Doc. 64 ("Defs.' Letter").) Plaintiff proposes that CENTCOM review records for production at a rate of 500 pages per month, with the first production on June 13, 2022, (*see* Pl.'s Letter 1); Defendants propose that CENTCOM review records for production at a rate of 300 pages every 60 days, with the first production on June 24, 2022, (*see* Defs.' Letter 1). For the reasons stated herein, Defendants are ordered to review records for production at a rate of a minimum of 500 pages every 60 days, with the first production on June 24, 2022.

       FOIA requires the government to make public records "promptly available" upon request,

or else to justify why the public records should be withheld pursuant to an enumerated exemption.  5 U.S.C. § 552.  FOIA provides that "[e]ach agency, upon any request for records . . . shall determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor. . . ."  5 U.S.C. § 552(a)(6)(A)(i)(I).  If the agency fails to make a determination within the statutory timelines, the FOIA requester may seek judicial review.  *See* 5 U.S.C. §§ 552(a)(4)(B), 552(6)(C)(i); *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013).

In exercising its judicial review, a court has "broad discretion to determine a reasonable processing rate for a FOIA request."  *Colbert v. Fed. Bureau of Investigation*, No. 16-CV-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018); *see also Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012) ("[C]ourts have equitable powers to order agencies to act within a particular time frame.").  To determine whether a particular processing rate is "practicable" for an agency, "[c]ourts consider, for example, evidence of the agency's resource constraints, obligations to other FOIA requests, whether the request implicates sensitive or confidential materials, and whether there is evidence that the agency is not representing its capacity in good faith."  *Documented NY v. United States Dep't of State*, No. 20-CV-1946 (AJN), 2021 WL 4226239, at *2 (S.D.N.Y. Sept. 16, 2021) (ordering defendants to increase their processing rate).  While affidavits submitted by government agencies in FOIA litigation are "accorded a presumption of good faith," *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994) (internal quotation marks omitted), courts have "reject[ed] the notion that the decision of practicability is to be determined solely by the agency," *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 38 (D.D.C. 2006).  Instead, "courts have the authority, and perhaps the

obligation, to scrutinize closely agency delay." *Id.* (collecting cases).

Plaintiff submitted the FOIA requests at issue in this case in June 2019. (Compl. ¶¶ 19, 22, 30, 34.) On October 24, 2019, Plaintiff brought this action alleging that Defendants failed "to make a reasonable effort to search for the records requested" and failed to make the records "promptly available" as required by FOIA. (*Id.* ¶¶ 43, 44.) For almost two years now, the parties have filed periodic status updates reporting on various problems causing delays in Defendants' processing and production of the requested records. (*See, e.g.*, Docs. 17, 28, 32, 34, 36, 40, 53, 57.) The parties now agree (1) "that U.S. Army Counterintelligence Command ("USACIC") will conduct the initial responsiveness review at a rate of at least 500 records every 60 days," (2) "that USACIC will make monthly transfers of responsive records to CENTCOM for subsequent review and processing," and (3) "that CENTCOM will make rolling productions" to Plaintiff. (Pl.'s Letter 3; *see also* Defs.' Letter 1.) The parties disagree as to the rate of CENTCOM's review. Plaintiff primarily argues that courts have "regularly ordered agencies to process records at significantly higher rates than the rates either party here proposes." (Pl.'s Letter 3–4 (collecting cases).) Defendants counter that "higher processing rates that may be reasonable for other agencies are not necessar[il]y reasonable for CENTCOM," and that "CENTCOM cannot process Plaintiff's request at a rate faster than 300 pages every two months without redirecting significant resources away from the processing of records of other requests in litigation and new requests received by CENTCOM." (Defs.' Letter 1, 2 n.1.) Defendants have filed a declaration from CENTCOM's Freedom of Information/Privacy Act (FOIA/PA) Section Chief Evlyn A. Hearne in support of their proposal. (Doc. 64-1 ("Hearne Decl.").)

I appreciate that Defendants have significant resource constraints and face a large backlog that has only grown over the course of the COVID-19 pandemic. I understand that

CENTCOM has a starting backlog of 3,421 FOIA requests, and that the number of FOIA requests has increased more than 500 percent in the last seven years. (*Id.* ¶ 11.) Time devoted to processing Plaintiff's request is, necessarily, time that is not devoted to the other 3,420 requests. The FOIA requests themselves have also become more complicated over time. The majority of CENTCOM's FOIA requests are now designated "complex," (*id.* ¶ 10, *see also id.* ¶¶ 14–19), and each complex request takes an average of 320 days to process, (*id.* ¶ 22). Relatedly, most of CENTCOM's searches must be "conducted using SECRET and TOP-SECRET-level computer systems," and "documents must undergo classification reviews before they can be processed for FOIA exemptions." (*Id.* ¶ 23; *see also id.* ¶ 12.) However, while the difficulty of processing classified materials is certainly relevant, it cannot be dispositive. "It is the duty of the court to uphold FOIA by striking a proper balance between plaintiffs' right to receive information on government activity in a timely manner and the government's contention that national security concerns prevent timely disclosure or identification." *ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004) (ordering defendant to produce documents responsive to plaintiff's FOIA request concerning treatment and interrogation of detainees within 30 days).

  Moreover, Defendants have offered evidence that CENTCOM has increased its capacity. First, the number of new FOIA requests received by CENTCOM dropped significantly last year, from 1,480 requests in 2020 to 501 requests in 2021. (Hearne Decl. ¶ 11.) CENTCOM's backlog still grew, (*id.*), but the increase was in large part due to temporary pandemic-related restrictions. (*Id.* ¶ 26 ("Had it not been for the COVID-19 pandemic, which required [CENTCOM] to reduce staffing to below 50% due to social distancing requirements, there would have been a significant reduction in the number of closed cases.").) Furthermore, CENTCOM "doubled its staff" in 2020 to eight full-time FOIA employees. (*Id.*) While two of those eight

employees have since departed, "CENTCOM is working to replace employees," and when those replacements are found, CENTCOM should have double the capacity to process FOIA requests compared to the capacity it had before 2020. (*Id.*)

Considering the totality of the circumstances, I find that a rate of 500 pages every 60 days should be practicable. This rate is within the range of release schedules at CENTCOM. (*See id.* ¶ 21 (citing, *e.g.*, *Osen LLC v. United States Central Command*, No. 19-cv-6867 (S.D.N.Y.).) While I acknowledge Defendants' limitations, I also recognize that this case has dragged on since October 2019. If FOIA is to be more than a dead letter, Defendants must act on Plaintiff's request with a greater degree of urgency. *Cf. ACLU*, 339 F. Supp. 2d at 504 ("[T]he glacial pace at which defendant agencies have been responding to plaintiffs' requests shows an indifference to the commands of FOIA, and fails to afford accountability of government that the act requires.").

Accordingly, Defendants are ordered to review records for production at a rate of a minimum of 500 pages every 60 days, with the first production on June 24, 2022. The parties are further ordered to jointly file a status update on or before July 1, 2022, and every 60 days thereafter, addressing, among other things: (1) Defendants' processing rate, (2) Defendants' efforts to improve the processing rate, (3) a specific explanation for Defendants' failure, if any, to review at least 500 pages in the previous 60 days, and (4) the number of pages produced to Plaintiff.

SO ORDERED.

Dated: April 21, 2022
      New York, New York

*Vernon Broderick* (signature)

Vernon S. Broderick
United States District Judge